States v. Johnson. Ms. Ramay. Good morning, Your Honors. May it please the Court, Counsel. My name is Colleen Ramay, and I am here on behalf of defendant appellant Linn Johnson. Every defendant has the right to be sentenced based on reliable information. We are here today because this right was infringed in Mr. Johnson's case. To protect this right, a sentencing court is expected to assess the reliability of information or of statements made by a defendant when the record suggests that he was impaired at the time he made the statements. In this case, the district court committed procedural error when it failed to conduct such an analysis, despite clear evidence before it that Mr. Johnson was impaired due to extreme fatigue and, in fact, he appeared to be falling asleep when he made the statements at issue. So when I looked at the transcript, which I, I mean, I didn't watch anything, but when I looked at the transcript, I, I was marking spots where some indication of, of his drowsiness or about to fall asleep were in there. In the first few pages up to around page 12, there are, you know, four or five references, but, but this isn't an interview that's going on in the early afternoon, right? It's about 1.30, 2 o'clock in the morning. I don't see any further indication after he gets going, and the district court judge did have the opportunity to watch the interview and didn't seem to spot anything either. So, so why shouldn't we accept that as, as the best assurance that he was not so impaired by drowsiness that he couldn't make the statements that he did? Your Honor, I believe that because this was brought up so many times, it was mentioned in the sentencing memorandum, it was called to the court's attention, that it's possible, it's certainly possible that a full analysis could show that the statements were reliable. But I'm just saying, you know, when you look at the actual event, which, which, because it was recorded, is before the judge, maybe at the beginning he is kind of sleepy, but he seems to snap to it, you know, and, and there's no further complaint after around about the twelfth page of the transcript. And right around the twelfth page of the transcript, if memory serves, is when he makes the incriminating statements, I believe. I'm trying to look at... He makes quite a few of them, actually, so he may start, he may start making them there, but I'm not sure that that was it. Well, another issue in this case is that it's, you know, the, his fatigue level is compounded by the fact that we don't know what happened in the second interview where he allegedly initially made the statements. Right, this is the follow-up interview. This is the third interview of the day. He explains that due to certain sleep issues that he has, he has trouble staying awake. He's been falling asleep. You know, at one point the agent even says, now stay with me here, don't fall asleep on me. This is, you know, not just, oh, I'm a little bit tired. He's, he's clearly having trouble really staying awake. And then he's being asked several leading questions about alleged prior statements he's made. And so, in terms of determining the amount of coercive effect that the interview, you know, the way the interview was conducted had on him, because we aren't privy to what happened in the prior interview, it's, it's difficult on review or even for the sentencing court to determine really the, the reliability of these statements given both his extreme fatigue and, and sort of the, you know, then, and therefore, which could make him much more susceptible to more coercive interrogation. He is also... That would be harder to spot, I think. I mean, Judge Miller watching the video, I think, would have had a very good sense of whether a statement is made, you know, in a clear voice or in, you know, sitting up straight or all, all of the little cues that we use to assess whether the person we're talking to is about to drop off to sleep or not. Certainly the video does... Judge Miller seems to be satisfied that, and, and actually we're not really talking about whether, I mean, I think we're on plain error review here, are we not? Well, you know, as a procedural matter, I believe we're here reviewing the procedure of the, of the court. The court failed to actually conduct any analysis of whether or not the statements were reliable. Well, there was no objection to the use of the statements on, on reliability grounds. There was an argument that the statements didn't amount to abuse or didn't establish abuse, but the focus wasn't on reliability or unreliability and there was no argument about sleepiness. So I think it is plain error review. Well, certainly the government would like us to be on plain error review with respect to that, but I, I would suggest to the court that when the defendant made, you know, in the sentencing memorandum, now certainly it was probably not as artfully crafted as it may have been, but in the sentencing memorandum, the defendant first laid out why the statements were unreliable by highlighting the fact that this was the third interview of the day. He was extremely tired and they, so that was put first and foremost, and then they went into why, you know, these, the statements themselves even didn't amount, you know, as a legal matter to, to a pattern of activity. Well, that's the question. I mean, it's one thing to say I was really drowsy, but it's another thing to present to the district court the argument, the fact that I was falling asleep means that you should not rely on this, these statements I made because they are not reliable statements, because they were made in a haze and a dream or, you know, barely awake, whatever you wanted to say. So, so tying that together to a legal argument doesn't seem to have happened. I, I certainly understand that position, Your Honor. I think that, you know, given that the, the defense counsel did highlight this, the appropriate way to look at it would be that sort of he took positions in the alternative. I think defense counsel is put into a difficult position, typically in terms of trying to preserve acceptance of responsibility and still make the legal arguments. And clearly that, that appears to have failed on both fronts. What would you envision would occur on a remand in a hearing? Well, at least on a remand, the parties would be able to flesh out whether or not he was impaired and... Would that just involve... My argument would be that he was, was sufficiently impaired and the coercive, you know, as I was mentioning, the coercive effect with that not being able to be determined, the statements are inherently unreliable and therefore he would not be subject to... So, but specifically, what would you envision occurring at that hearing? I understand sort of your global assessment, but would you have the judge re-examine the, the videos? And would you have the petitioner further explain his position? What, what, what do you specifically, what would occur on that re-hearing? I suppose one of two things could occur. If the, if this court agrees with us and directs that, the court agrees that the statements, as presented in the second half of my brief, that the statements were inherently unreliable, that they should not be used, then, you know, we could remand with direction to simply... You're suggesting evidence could indicate that they, they would not be considered at all? Correct. So we'd have no pattern evidence? Is that... No, he would not be... So you'd get rid of the five levels on the sentencing guidelines? Five levels and also the acceptance of responsibility analysis would change. So he could put down seven to eight levels, which then would completely change the guidelines. But if you, the court doesn't... Do you want to... Otherwise, they'd be able to at least flesh it out. Okay. Thank you. Thank you. I'll reserve the rest of my time. Mr. Whalen. Excuse me. Good morning, Your Honors, and may it please the court. My name is Nathaniel Whalen, and I'm here on behalf of the United States. As an initial point, Judges Wood and Sykes, we agree that we're on a plain error review. And I'd say beyond not making the objection, the defendant actually affirmatively relies on his transcript in making arguments in the sentencing memorandum. He cites it extensively in support of his arguments with the PSR, in support of why he deserves a lower sentence. But, you know, it's not uncommon for there to be, whether it's a transcript, whether it's a wiretap. I mean, it seems to me I've seen a million cases where somebody relies on part of it, but they don't rely on the other part. There's no rule that you have to adopt the whole thing. Absolutely, Your Honor. But I believe his position is an all or nothing here, that it's all inherently unreliable or it's reliable. I don't think that he's selecting specific portions and saying, well, this part's reliable, this part isn't. The argument is it was entirely subject to coercion, I guess, is what the argument is. And so the court shouldn't have considered any statements he made in there. He just didn't make that argument in the district court. And if there's anyone who knows whether he's subject to sleep deprivation, it's Mr. Johnson himself. And I would expect a defendant in that scenario, like in some of the cases we cited in our brief, to be screaming, jumping, waving his hand, saying, Your Honor, you can't rely on this. It's unreliable. And we just don't have that here. So we are on a plain error. And then the question becomes... Can you remind me, as I recall, this third interview starts in the early afternoon. It's about 1.40, Your Honor. Right. But when did the whole thing start? When does he get taken over to this... In other words, how long has he been up and being talked to? Your Honor, I could answer that question. It's not in the record. I've looked at the first video of that day. The first video starts at about 10.20, 10.30. I believe they executed the search warrants sometime mid-morning, so a little before at 10.30. So as I understand... So it's not like he's been going since 4 a.m., if we can look at that... It's my understanding that they didn't execute the search warrant at 4 a.m. Okay. And that's when this all starts, on that morning of December 16th. So because we are here on plain error, the question is whether this confession was so inherently unreliable that Judge Miller had an obligation, without prompting, to stop and conduct a reliability analysis. This transcript just doesn't present that type of confession. It's not lots of leading questions. It's not the agent putting words in the defendant's mouth. They do recap some of his statements from the second interview and ask him to... Which we don't have in the record. Correct. We do not have that in the record, Your Honor. But after he affirms, yeah, I said that in the second interview, Trooper Jones then comes in and just rehashes it all over again. So Mr. Johnson twice makes what I think are the key admissions to this pattern enhancement. He denies certain conduct. He minimizes. He justifies. This just isn't the type of confession that jumps out at you as something the district court has to consider whether I can believe the defendant's own words. He also says at some point that, you know, I'm a little bit tired but I'm telling you the truth. He does say that, Your Honor. And then the second argument is whether the district court abused its discretion on relying on this confession. For the five levels. That's a lot. For the five levels. That's correct, Your Honor. And Mr. Johnson argues first that it And this argument is for abuse of discretion because he did object to the enhancement. Mr. Johnson argues that the statements weren't corroborated so they were unreliable. This court has said you don't have to corroborate the defendant's own statements. And, you know, they are minimally corroborated by JV telling a friend. This is the friend of the child. Right. That we kissed and touched. So the district court didn't abuse its discretion there. The second argument relates to this sleep deprivation coercion type argument. And as I understand it, Mr. Johnson is putting forth the position that essentially these statements were coerced. Again, that's just not this transcript. It's not the agents feeding him words. It's not them leading questions. I mean, it could be a case, whether it's this case or not. But surely sleep deprivation can be a very severe condition. Absolutely, Your Honor. And in situations like that you would expect to see the agents planting ideas and the defendant, you know, yes, yes, no, yes. But here Mr. Johnson's pushing back on some. He says make sure you have that written down. No, no, no, no, no. Hell no. I never did that particular act. He's reenacting scenes. He's providing extensive detail. You know, this just isn't the case where the district court abuses discretion on relying on this transcript. Unless this court has any further questions, we would ask that you affirm. All right. Apparently not. Thank you very much. Thank you, Your Honors. Mr. May, anything more? Just a couple really quick points. In terms of the sentencing memorandum, I feel that the only way that you can make sense of the inclusion of this, you know, the mention of the fatigue as an argument and the alternative, even if it wasn't, it could have been more clearly stated. And so the court did have, it was signaled to this, it did have prompting to address the reliability of the statements. And just as a second note in response to what counsel mentioned, is that while it is certainly true that defendant's admissions are sufficient to be held against him and sustain an enhancement for sentencing, they're only sufficient when they're reliable. And the position here is they were not. So with that, we ask the court to reverse and remand for resentencing in this case. All right. And we thank you very much. I know that this started out as an Anders brief on the part of your office, and we told you, no, we don't want an Anders brief. Argue this case. You have ably represented your client. Thanks as well to the government. Thank you, Your Honors. And we will take the case under advisement.